**METHODIST HOME, Appellant,**

v.

**Tom J. MAYS, Appellee.**

**No. 6744.**

Court of Civil Appeals of Texas.

Texarkana.

Nov. 11, 1954.

Rehearing Denied Dec. 2, 1954.

Witt, Terrell, Jones & Riley, Waco, for appellant.

Carney, Carney & Mays, Atlanta, Robert. S. Vance, Texarkana, for appellee.

FANNING, Justice.

This suit was brought by appellee, Tom J. Mays, as a trespass to try title suit and to remove cloud from 238 acres of land in Cass County, Texas (and pleading various limitation statutes), against Sulphur Oil Company, a defunct corporation, and. the unknown stockholders of Sulphur Oil. Company, and various other named defendants, including Methodist Home, a corporation. Trial was to the court without a jury and the court rendered judgment in. favor of appellee. No findings of fact or conclusions of law were requested and none were filed. Appellant, Methodist Home, has appealed. None of the other defendants have appealed.

It was stipulated that F. M. Greene (the common source of title) received good title to the 238-acre tract in 1903. In 1907, F. M. Greene executed an instrument, titled "oil and gas lease," covering 1414 acres of land in Cass County, Texas, including the 238-acre tract, to Sulphur Oil Company, a corporation, reciting a cash consideration of $1414 (which was not paid in cash as recited, but in stock and other contractual.

considerations as hereinafter noted), which reads in part as follows:

"Oil & Gas Lease

"F. M. Green    To    Sulphur Oil Co.

"The State of Texas ⎱ "Know All Men By
"County of Cass   ⎰ These Presents:

"that I, F. M. Greene of the County of Cass in the State aforesaid, for and in consideration of the sum of Fourteen Hundred and fourteen dollars paid by Sulphur Oil Co., a private corporation under and by virtue of the laws of Texas, with its office at Atlanta, Cass County, Texas, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Sulphur Oil Co. of the County of Cass, State of Texas, all petroleum, gas and other minerals (except iron ore) in and under the following described tract of land in Cass County, Texas, and fully described as follows"

(Here follows description of 1,414 acres of land including the 238-acre tract in controversy).

"Said Sulphur Oil Co. to have the right at any time to enter upon said premises, for the purpose of drilling or operating for oil, gas or other minerals (except iron ore) to erect, maintain and remove all structures, pipe lines, and machinery necessary for the production, transportation and storage of oil, gas or other minerals (except iron ore), provided however said Sulphur Oil Co. shall pay all damages to any improvements on said land, and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend, all and singular the title to said minerals unto the said Sulphur Oil Co. and its assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"Witness my hand at Atlanta, Tex. this 24" day of June, A.D. 1907.

F. M. Greene."

In 1909 F. M. Greene conveyed the 238-acre tract by warranty deed to N. J. Pickett, and in this deed the clause appears, "and except minerals granted to Sulphur Oil Company."

By a regular chain of conveyances by straight warranty deed (with no reference whatever to the Sulphur Oil Company instrument) the 238-acre tract was conveyed by Pickett and his successors in title to D. J. Wooding. The deed to Wooding dated March 11, 1913, was filed for record on June 15, 1913. On March 17, 1913, just six days after the Wooding deed and prior to the recordation of such deed, F. M. Greene as President of Sulphur Oil Company (the same F. M. Greene hereinbefore referred to) issued a certificate of stock in said oil company to D. J. Wooding for 2.38 shares, which stock was of a par value of $100 per share, making this certificate of the par value of $238. As hereinafter more fully shown, Sulphur Oil Company had acquired its rights in the minerals by certain contractual considerations and by issuing stock in the amount of $1 for each acre of minerals acquired. The 2.38 shares of stock corresponded exactly to the 238 acres of land then owned by D. J. Wooding. D. J. Wooding and F. M. Greene were both deceased long prior to the trial of the case at bar. James B. Wooding, a 55-year-old son of D. J. Wooding, testified that shortly after his father obtained the deed, his father went to see F. M. Greene, President of Sulphur Oil Company, about the minerals in the 238 acres and returned with the certificate of stock which was issued so that his father would get the mineral rights in the land. Wooding also attempted to further testify (which was excluded by the trial court) to the effect that the trip to Greene was quite a topic of conversation in the family and that the stock was issued by Greene on the insistence of D. J. Wooding that the minerals be released back to Wooding and that Greene issued the stock in recognition of Wooding's ownership of the minerals (under the 238 acres) or right to get these minerals from Sulphur Oil Company.

On October 24, 1917, Sulphur Oil Company (by its Vice-President, acting in the absence and disability of its President, F. M. Greene) executed an instrument entitled "Release Deed," in favor of F. M. Greene and other various landowners who had ex-

ecuted instruments theretofore to said Oil Company, which instrument reads in part as follows:

"Sulphur Oil Co.⎤ Oil & Gas.
"To,—· ⎬ Release Deed Dtd.
"F. M. Greene, et als.⎦ Oct. 24th, 1917.

"The State of Texas
"County of Cass.

Know All Men By These Presents:

"That, Whereas, heretofore certain land owners whose names will hereafter appear in the body of this deed, made, executed and delivered to the Sulphur Oil Company, a corporation organized under the laws of the State of Texas, for the purposes of exploring for and developing oil and gas in Cass County, Texas and the surrounding counties, and in the State of Louisiana, and the State of Arkansas, deeds to the oil and gas, in and under said lands, owned by said parties, and whereas the said Sulphur Oil Company, *in consideration of the transfer of said oil and gas and other minerals, in and under said lands, on its part agreed to bring in a paying well for oil or gas and develope the territory covered by the lands under which the oil and gas was conveyed, or retransfer same to the owner of said land, and whereas said corporation has failed, and does not now own a paying well of oil or gas under any of the said lands, and are not willing to further under take the development of the same, and*

"*Whereas, when said transfer of said oil and gas and other minerals was made as aforesaid, said Sulphur Oil Company issued to each of said land owners stock in said Sulphur Oil Company, to the amount of one dollar per acre, for each and every acre of land under which said oil and gas was transferred,* and

"Whereas, on towit, the 18th day of Oct. 1917, at a called meeting of the directors of said Oil Co., there being a quorum present and participating in said meeting a motion was offered and carried by a unanimous vote of all of said directors, to retransfer all the oil, gas and other minerals in and under said land to the original land owners hereinafter named, in consideration of all of the stock owned or held by said land owners, *or their transferees;*

"Now, therefore, we the Sulphur Oil Co., by H. A. O'Neal, Vice President of said Co., duly authorized to act as president of same, in the abscence and disability of F. M. Greene, its president, for and in consideration of the cancellation and delivery of said stock to said corporation, have this day and do by these presents, relinquish and convey unto said parties, all the rights, title, interest that the said Sulphur Oil Company has in said oil, gas and other minerals by reason of said conveyances to the said Sulphur Oil Company, to-wit:— * * *"

Note: Other tracts of land are called for and described in this instrument besides the hereinafter referred to tract. To F. M. Greene 1415 acres of land in Cass County, Texas, described in a deed from said named party to Sulphur Oil Company, etc. (This includes the 238 acres in controversy).

"To Have and To Hold unto said respective parties all of said oil, gas and other minerals that were deeded to said Sulphur Oil Company by said parties so that neither the said Sulphur Oil Company, nor any one claiming under it shall hereafter have claim or demand the same or any part thereof.

"In witness whereof the Sulphur Oil Company has caused these presents to be signed by H. A. O'Neal its vice president the president being abscent, thereunto authorized by a vote of the directors of said corporation and its common seal hereto affixed, this the 24ᵗʰ day of Oct., A.D. 1917.

> Sulphur Oil Co.,
> By H. A. O'Neal
> Its Vice President.

"Attest: L. W. Willis
　　　　Secretary.
"Corporate Seal"

On October 16, 1920, D. J. Wooding and wife by warranty deed conveyed the 238 acres to their son James B. Wooding. On March 18, 1953, James B. Wooding and wife by warranty deed conveyed the 238 acres to Tom J. Mays, appellee herein, and also delivered the 2.38-share stock certifi-

cate to Mr. Mays at the same time. The land in controversy has never produced oil or gas.

F. M. Greene died intestate in Cass County in 1922, and left surviving him his widow, Meda Greene, and one child, Annie Greene, who married L. W. Willis. No administration was had on the estate of F. M. Greene and none was necessary.. F. M. Greene never paid any taxes on the minerals under the 238 acres during his lifetime and never leased or attempted to lease the minerals thereon from 1907 to his death in 1922.

An administration was had on the estate of Mrs. Willis, who preceded her husband, L. W. Willis, and her mother, Mrs. Meda Greene, in death about the year 1936. The inventory filed in the estate of Mrs. Willis does not show her as owning or claiming any interest in the minerals under the 238-acre tract.

L. W. Willis died testate about the year 1945. The inventory filed in his estate does not show or list any claim of ownership or interest in the minerals in the 238 acres.

Mrs. Meda Greene died testate in 1949. The inventory filed in her estate does not show or list any claim of ownership or interest in the minerals in the 238 acres.

It was stipulated (in essence) that by virtue of the wills of Mrs. Willis, L. W. Willis, and Mrs. Greene, that Methodist Home had succeeded to the estates of the Greenes and Willises.

There was testimony in the record to the effect that the Woodings had peaceable possession of the 238 acres in question from 1913 to 1953, a period of 40 years, with further testimony that the land had been fenced, was farmed, pastured, etc., for a period of more than 25 years, etc., which testimony, however, we deem unnecessary to detail at length here. The testimony also shows that the Woodings paid taxes regularly on the land, including the minerals during the ownership of the Woodings (except some delinquent school district taxes for the years 1949, 1950, 1951, and 1952, which were paid by appellee, Tom J.

Mays) and that the Woodings executed oil and gas leases and mineral instruments (now expired) on the 238 acres in controversy.

The record further shows that F. M. Greene never rendered the land or minerals in controversy for taxation (after 1907) and never paid any taxes on same. There is testimony in the record to the effect that in 1944 L. W. Willis paid four years' taxes on the minerals in the 238 acres; however, there is no evidence that Willis or any of the Greenes. either prior or subsequent thereto paid or attempted to pay any taxes on the minerals under the 238 acres. On November 16, 1944, Meda Greene and L. W. Willis executed a 10-year oil and gas lease to the 238 acres in controversy to R. L. Pruett. This lease is the only lease ever made by any of the Greenes or Willises since 1907. Pruett assigned this lease to L. A. Grelling on the same day. Grelling was a party defendant in this suit and he has not appealed from the judgment of the trial court which was adverse to him.

Appellant presents six points. By its first five points appellant contends (in essence) that the trial court erred in overruling appellant's motion for judgment when appellee first announced he would rest because (1) "the title to the minerals in question did not pass to D. J. Wooding under whom appellee claims since the minerals were excepted from the conveyance from F. M. Greene to N. J. Pickett"; (2) the title to the minerals in question did not pass to D. J. Wooding by virtue of the issuance to him of the 2.38 shares of stock of Sulphur Oil Company; (3) the title to the minerals in question did not vest in appellee or in those under whom he claims by virtue of the statutes of limitation, by reason of the severance of the mineral estate and the surface estate, etc.;. (4) the title to the minerals in question was not conveyed to D. J. Wooding in the 1917 conveyance from Sulphur Oil Company "because the conveyance is unambiguous and shows clearly that the minerals were conveyed to F. M. Greene;" and (5) "there was no evidence showing that the equitable title to the minerals in question passed to

D. J. Wooding or that a constructive trust had been imposed on said minerals in favor of appellee or any person or persons under whom he claims title." In its sixth point appellant contends "that the trial court erred in failing to render judgment for it at the conclusion of all the evidence because appellant showed a superior title to the minerals, that any equitable right asserted by appellee was a stale demand barred by laches, that Greene and those claiming under him had claimed the minerals since 1917 and had not conveyed the minerals to D. J. Wooding or anyone else."

Appellee by his first counterpoint to appellant's first point in essence contends that Greene did not reserve any minerals unto himself in the conveyance to Pickett but merely made exception of the minerals granted to Sulphur Oil Company to protect himself on his warranty and that any title Greene had to the minerals actually passed by his deed into Pickett, and later into D. J. Wooding, under whom appellee claims.

The 1907 instrument in question although titled "oil and gas lease," and which recites the payment of $1,414 in cash for the 1414 acres, on its face apparently was in the nature of a mineral conveyance—however we learn in the 1917 release deed that actually the consideration was not paid in cash as recited in the 1907 instrument, but that the company issued stock to each of said landowners to the amount of one dollar per mineral acre, and that the various landowners (including Greene) executed said instruments in consideration of the obligation of Sulphur Oil Company to bring in a paying well for oil or gas and to develop the territory covered by the lands under which the oil and gas was conveyed, with the obligation of the company to re-transfer same to the owners of said lands in the event of failure to so do.

In Klein v. Humble Oil & Refining Co., Tex.Civ.App., 67 S.W.2d 911, 912, affirmed by Sup.Ct. in 86 S.W.2d 1077, Klein had conveyed 60 acres of land to Baker by warranty deed, which recited, "there is however excepted from this conveyance ⅛ of all mineral rights in and under Ten acres"

(which were described). Stein (a former owner) had prior thereto specifically reserved ⅛ of said minerals. The question was whether Klein had reserved any minerals in his warranty deed to Baker. The court, in holding that Klein's exception reserved nothing to him, stated:

"Klein's deed does not recite that the exception of ⅛ of the minerals in the east 10 acres is for his benefit. It does not recite that there is reserved unto himself ⅛ of the minerals in the east 10 acres. The deed does not say for whose benefit the exception is made. He merely said that there 'is excepted' from the conveyance and warranty the ⅛ interest. * * * The primary distinction between a reservation and exception is that a reservation must always be in favor of and for the benefit of the grantor, whereas, an exception is a mere exclusion from the grant, in favor of the grantor only to the extent that such interest as is excepted may then be vested in the grantor, and not outstanding in another * * * the exception was but to preserve and protect the Stein reservation and Klein's warranty."

The case of Stroud v. Hunt Oil Co., Tex. Civ.App., Eastland, 147 S.W.2d 564, 565, is in some respects similar to the case at bar. In the Stroud case H. B. Young in 1920 sold to Rusk County a strip of land for a highway right of way and in 1925 Young sold the entire 393-acre tract, which included the highway strip, to Calvin B. Young by general warranty deed which recited "but from which is excepted that part of the Henderson and Tyler Highway which crosses the North East corner of the above bounded land." The State of Texas in 1938 executed a release and quitclaim as to the small (former highway) strip directly to H. B. Young, the original owner. The question was whether H. B. Young had reserved fee title in himself or whether he intended only to protect himself on his warranty. The court held that title to the strip passed to Calvin B. Young under the warranty deed from H. B. Young, stating:

"As in the Klein case, * * * there was no language used to indicate that the exception was for the benefit of the grantor. * * * Bearing in mind the established rules of construction that grants are liberally, exceptions strictly, construed, we are compelled to agree with the trial court that this was no exception of land but that the grantors intended by such provision to protect themselves on their warranty against any claim by virtue of their previous conveyance of a right of way to Rusk County, which right of way had become a state highway."

■ Irrespective of whether the 1907 instrument, as construed in the light of the 1917 instrument, will be construed as a mineral deed, or as an oil and gas lease or as a determinable fee, we have reached the conclusion in the light of the record in this case that F. M. Greene did not intend to reserve and did not reserve anything unto himself or his heirs or assigns by the exception noted in his warranty deed to Pickett, and that said exception was made only for the purpose of protecting him on his general warranty. We conclude further that the legal title to the minerals in question passed to Pickett under the warranty deed from Greene subject only to whatever rights Sulphur Oil Company had under the 1907 instrument and that upon the release and/or re-transfer of said rights by Sulphur Oil Company in the 1917 instrument, the full legal title to the minerals in question vested in D. J. Wooding who then held the record title to the land under warranty deeds. In addition to the authorities cited above see the following authorities: Robinson v. Jacobs, 113 Tex. 231, 254 S.W. 309; Frels v. Schuette, Tex.Civ.App., 222 S.W. 2d 1006, error refused; Texas Creosoting Co. v. Hartburg Lbr. Co., Tex.Com.App., 12 S.W.2d 169; and Bibb v. Nolan, Tex. Civ.App., 6 S.W.2d 156, error refused. We overrule appellant's first point and sustain appellee's first counter point.

Appellee's second counter point (in answer to appellant's second, fourth, and fifth points) reads as follows:

■■■

"The court did not err in overruling the appellant's motion for judgment because the evidence clearly shows that the 2.38 shares of stock was issued by F. M. Greene as President of Sulphur Oil Company in recognition of the right of D. J. Wooding to have the minerals released to Wooding, and that appellant is estopped to deny the effect of the stock; and the release of the minerals effectively conveyed both the legal and the equitable title to the minerals to D. J. Wooding; and in any event, the ownership of the stock by Wooding at the time of the release, assuming the release was to Greene, created a constructive trust under which Greene was obligated to transfer the minerals to Wooding."

■ Since there were no findings of fact or conclusions of law filed in this cause, the judgment of the trial court should be affirmed if there was sufficient evidence to support it upon any lawful theory. Munn v. Riggs, Tex.Civ.App., 257 S.W.2d 714, and Gray v. Luther, Tex.Civ.App., 195 S. W.2d 434, writ refused. While we believe appellee's first counter point is well taken and decisive of this case, however if we be mistaken in that conclusion, we think the evidence and the record in this case will sufficiently support the judgment of the trial court upon some or perhaps all of the theories outlined above in appellee's second counter point.

In view of our holdings above, we deem it unnecessary to discuss the contentions of the parties with respect to limitation and adverse possession.

We think that the law and the equities in this case are with the appellee. In any and all events, we think the able and learned trial court correctly rendered judgment for appellee.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

The opinion handed down in this case on November 11, 1954, will be amended as follows:

450

·[3] On page 9, beginning with line 12, is a sentence reading: "While we believe appellee's first counter point is well taken and decisive of this case, however if we be mistaken in that conclusion, we think the evidence and the record in this case will sufficiently support the judgment of the trial court upon some or perhaps all of the theories outlined above in appellee's second counter point." This sentence has been changed to read: "While we believe appellee's first counter point is well taken and decisive of this case, however, if we be mistaken in that conclusion, we think the evidence and the record in this case (under the undisputed facts hereinabove stated in the statement of this case) will sufficiently support the judgment of the trial court upon the theories outlined above in appellee's second counter point."

Appellant's motion for findings of fact and conclusions of law is overruled.

Appellant's motion for rehearing is overruled.